IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER RAMIREZ, | § § § | |
| *Petitioner*, | § § | |
| v. | § § | CIVIL ACTION NO. 9:25-CV-00334 |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; PAMELA J. BONDI, in her official capacity as Attorney General of the United States; BRET BRADFORD, in his official capacity as Field Office Director of ICE Enforcement and Removal Operations Houston Field Office; and ALEXANDER SANCHEZ, in his official capacity as Warden of the IAH Secure Adult Detention Facility, | § § § § § § § § § § § § § § § | JUDGE MICHAEL J. TRUNCALE |
| *Respondents*. | § § | |

**<u>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

Before the Court is Petitioner Christopher Ramirez's Petition for Writ of Habeas Corpus (the Petition), filed on December 15, 2025. [Dkt. 1]. For the reasons below, the Petition is **DENIED.**

**I. BACKGROUND**

Petitioner Christopher Ramirez (Ramirez) is a Nicaraguan national who entered the United States in September 2018. [Dkt. 1 at ¶ 26]. Upon entering the country, Ramirez was processed and given a "credible fear interview," a form of preliminary screening for asylum. *Id.* at ¶ 30. Following the interview, Ramirez was released on bond. *Id.* at ¶ 32. He applied for asylum after his release, but his application was denied. *Id.* at ¶ 35. His appeal of that decision is now pending before the Board of Immigration Appeals. *Id.* at ¶ 36.

Following his unsuccessful asylum application, Ramirez married a United States citizen and filed a family-based visa petition in hopes of eventually obtaining legal-permanent-resident status. *See*

1

8 U.S.C. § 1255(a). In September 2025, while Ramirez's family petition was pending, United States Immigration and Customs Enforcement (ICE) took him into custody and initiated deportation proceedings against him. [Dkt. 1 at ¶ 37–38]. Ramirez has remained in ICE custody in Livingston, Texas since his arrest. *Id.* at ¶ 41. While Ramirez was in custody, the Department of Homeland Security granted his family petition, making him eligible to apply for an adjustment of status. *See id.* at ¶ 39. On December 15, 2025, Ramirez filed this habeas action, challenging the legality of his detention on several grounds. *See id.* at 19–21.

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

## III. DISCUSSION

### A. Immigration and Naturalization Act

Ramirez first claims to be unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of "applicants for admission" who are not deemed "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). Ramirez argues that, because he was inspected by immigration authorities upon entering the United States, he is not an "applicant for admission" under section 1225(b)(2)(A). [Dkt. 4 at ¶¶ 32–33]. Instead, Ramirez argues that 8 U.S.C. § 1226(a) applies to cases like his. Under section 1226(a), an alien "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has discretion to release or "continue to detain" aliens detained pursuant to section

2

1226(a). *See id.* § 1226(a)(1)–(2).

Even if Ramirez is correct, and section 1225(b) is inapplicable, section 1226(a) nonetheless permits his continued detention during removal proceedings. *See id.* Section 1226(a) provides that "an alien may be arrested and detained" pending removal proceedings. § 1226(a). The Attorney General "may continue to detain the alien" or decide to release the alien on custody-redetermination. § 1226(a)(1)–(2). Section 1226(a) mentions nothing about custody redeterminations by immigration judges. *See id.* Here, the Attorney General, using her discretion under section 1226(a), has chosen to detain Ramirez pending his removal proceedings. Hence, Ramirez is lawfully detained under the INA, whether or not he receives a custody-redetermination hearing. *See id.*

Ramirez's successful family petition does not change the equation. While the grant of Ramirez's family petition makes him eligible to apply for adjustment of status, the Attorney General has sole decision to grant or deny his application. *See* § 1255(a). Accordingly, Ramirez's eligibility for adjustment of status does not preclude him from being detained pending removal proceedings. *See Ahmed v. Gonzales*, 447 F.3d 433, 438–39 (5th Cir. 2006).

### B. Federal Regulations

Ramirez next argues that, even if the INA itself does not entitle him to a custody-redetermination hearing, its accompanying regulations do. [Dkt. 1 at 20]. Ramirez's interpretation of these regulations is dubious. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Nothing in the text of the regulations suggests that custody-redetermination hearings are absolutely required. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). The regulations state only that an alien in removal proceedings "may request" a custody-redetermination hearing before he is ordered removed. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). They do not require immigration judges to honor aliens' requests for custody-redetermination hearings. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). Because the regulations use no mandatory language and lay out no parameters for granting or denying requests for custody-redetermination hearings, the Court does not read them to strictly require custody-redetermination

hearings. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). This reading is consistent with the discretionary nature of section 1226(a), which permits the Attorney General to "continue to detain" arrested aliens instead of granting them custody-redetermination. *See* 8 U.S.C. § 1226(a)(1)–(2). Immigration judges, who "act as the Attorney General's delegates in the cases that come before them," presumably enjoy the same discretion and can exercise it by denying custody-redetermination-hearing requests. *See* 8 C.F.R. § 1003.11(a). Accordingly, the Government did not violate federal regulations by denying Ramirez a custody-redetermination hearing. *See id.* §§ 236.1(d)(1), 1236.1(d)(1).

### C. Due Process

Ramirez further argues that due process, if not the INA, requires the Government to give him a custody-redetermination hearing. [Dkt. 1 at 20–21]. Even if Ramirez is correct, he still is not entitled to habeas relief. *See Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (Smith, J.). Ramirez does not claim that his confinement is itself unlawful. The illegality he complains of is the Government's failure to provide a custody-redetermination hearing. *See* [Dkt. 1 at 21]. Ramirez's presence in the United States without legal status is without question a valid reason for confining him during removal proceedings. Accordingly, Ramirez's due-process claim is ill-suited for habeas, which is "not available to review questions unrelated to the *cause of detention*."[1] *See Pierre*, 525 F.2d at 935 (emphasis added).

Due-process challenges to procedures like custody-redetermination hearings, which "affect[] the timing of [a prisoner's] release from custody," must normally be brought via a civil-rights action, not a habeas proceeding. *See Carson*, 112 F.3d at 820–21. A habeas petition is the proper device for raising such a challenge only when the challenged procedure would result in the petitioner's automatic release from custody if adequately performed. *See id.*

Here, a properly conducted custody-redetermination hearing would not invariably result in

---

[1] *See also Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring).

Ramirez's release. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Even if an alien receives a custody-redetermination hearing, the presiding immigration judge may order the alien's continued detention. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). Because a custody-redetermination hearing would not have guaranteed Ramirez's release from custody, his failure to receive one does not entitle him to habeas relief. *See Carson*, 112 F.3d at 820–21. If a violation of federal law occurred, it was not by way of Ramirez's detention, but the Government's failure to provide him with a custody-redetermination hearing once he was already detained. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly, a habeas proceeding is not the proper arena for Ramirez to raise a due-process challenge to the Government's failure to afford him a custody-redetermination hearing. *See Carson*, 112 F.3d at 820–21.

## IV. CONCLUSION

It is therefore **ORDERED** that Ramirez's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby **DENIED**. All pending motions are hereby **DENIED AS MOOT**. This constitutes a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 6th day of March, 2026.**

Michael J. Truncale
United States District Judge